**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CORRINE MARKOFF, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 23-cv-16401 |
| v. | ) ) | Judge Andrea R. Wood |
| ATHENA COSMETICS, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Athena Cosmetics, Inc. ("Athena") manufactures and sells beauty products, including four serums advertised as naturally enhancing the appearance of eyelashes or eyebrows. Plaintiff Corrine Markoff alleges that she purchased and used one of Athena's eyelash serums, after which she experienced pain and eye inflammation. According to Markoff, although Athena markets its serums as over-the-counter cosmetics without warning of any adverse side effects, the serums contain dechloro dihdroxy difluoro ethylcloprostenolamide ("DDDE"), an ingredient purportedly associated with adverse reactions affecting the eye. Because of Athena's alleged failure to disclose the risks associated with DDDE, Markoff has brought the present putative class action asserting claims under state consumer protection law, as well as common law claims for fraud, breach of warranty, negligence, and unjust enrichment. Before the Court is Athena's motion to dismiss the First Amended Class Action Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 23.) For the reasons that follow, Athena's motion is granted in part and denied in part.

## BACKGROUND

For purposes of the motion to dismiss, the Court accepts as true all well-pleaded facts in the FAC and views those facts in the light most favorable to Markoff as the non-moving party. *Hardimon v. Am. River Transp. Co., LLC, N.A.*, 95 F.4th 1130, 1133 (7th Cir. 2024). The FAC alleges as follows.

Athena manufactures and sells RevitaLash Advanced, RevitaBrow Advanced, RevitaLash Advanced Pro, and RevitaLash Advanced Sensitive (collectively, the "Products"), which are advertised as serums that naturally improve the appearance of the user's eyelashes or eyebrows. (FAC ¶¶ 2, 7, 38, Dkt. No. 22.) Each of the Products is sold over the counter nationwide[1] as a natural beauty product that enhances appearance. (*Id.* ¶¶ 6, 11.) In marketing the Products, Athena suggests that the Products do not contain any harmful substances and implies that natural ingredients like green tea, ginseng, and vitamins are what help enhance the appearance of eyelashes and eyebrows. (*Id.* ¶¶ 7, 33–34.) And, until recently, Athena represented that no Product contained any ingredient that could be considered a "drug." (*Id.* ¶ 36.)

Notwithstanding Athena's implicit representations that the Products are safe and natural, Markoff claims that each Product actually contains DDDE. (*Id.* ¶¶ 2–3, 43.) DDDE is a prostaglandin analog ("PGA"), a class of compounds found in prescription drugs used to aid the growth, lengthening, and thickening of eyelashes and eyebrows. (*Id.* ¶¶ 3–4, 28.) Due to the risk of side effects, the Food and Drug Administration ("FDA") has approved PGAs for use only under the supervision of a physician. (*Id.* ¶¶ 3, 5.) Other PGAs have been associated with a risk of adverse effects impacting the eye and its surrounding area, such as blepharitis, Meibomian

---

[1] Athena has been enjoined from selling the Products over the counter in California. (*See* FAC ¶ 9); *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350 (9th Cir. 2013).

Gland Dysfunction, chronic dry eye, redness, discoloration, pain, and irritation. (*Id.* ¶ 4.) A product similar to Athena's Products and containing another PGA that promotes eyelash growth received FDA approval as an ophthalmic drug and is available only by prescription. (*Id.* ¶ 32.) Yet Athena long represented that the Products were safe and free of any side effects, even though it knew them to contain DDDE. (*Id.* ¶¶ 22, 44–46, 53.) Similarly, no Product's packaging or labeling disclosed any side effects associated with its use. (*Id.* ¶ 23.) Only recently did Athena update its website to include a disclaimer about potential side effects associated with the Products. (*Id.* ¶ 48.) But even that disclaimer still asserts "that the cause of any effect is not known, or is simply some unspecified allergic reaction." (*Id.*)

Markoff, an Illinois resident, purchased one of the products, specifically, RevitaLash Advanced. (*Id.* ¶¶ 15–16.) After reviewing Athena's marketing materials and the product's packaging, Markoff believed it to be safe and free from side effects. (*Id.* ¶ 16.) After using RevitaLash Advanced, however, Markoff experienced pain and inflammation in her eye area. (*Id.* ¶ 17. ) Her experience was similar to that reported by other people who bought and used the Products. Multiple reviews posted on websites that sell the Products reveal that several users experienced various adverse effects to their eyes and surrounding areas, such as itching, burning, and redness. (*Id.* ¶ 47.)

According to Markoff, had she known of the side effects associated with the Products, she would not have bought RevitaLash Advanced or at least she would have paid less for it. (*Id.* ¶ 16.) For that reason, she filed the present lawsuit on behalf of herself and a putative class of similarly situated persons, seeking to recover economic damages sustained as a result of Athena's alleged misrepresentations regarding the Products' safety and side effects. Markoff

seeks to represent a nationwide class defined to include "all individuals in the United States and its territories and possession who, from the beginning of the statutory period through the present, paid any money for [the Products] for personal, family, or household purposes." (*Id.* ¶ 57.) She also seeks to represent a subclass consisting of "individuals in Illinois who, from the beginning of the statutory period through the present, paid any money for [the Products] for personal, family, or household purposes." (*Id.*) The FAC asserts the following claims: violation of state consumer protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count I)[2]; fraud (Count II); negligent misrepresentation (Count III); breach of express warranty (Count IV); breach of implied warranty (Count V); negligence (Count VI); and unjust enrichment (Count VII). Athena now seeks dismissal of all Markoff's claims.

## DISCUSSION

To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728

---

[2] The FAC states that Markoff asserts this claim "on behalf of herself and all similarly situated class members under Illinois law and all states' laws that do not conflict with Illinois law." (FAC ¶ 67.) It then lists consumer protection statutes for 50 individual states, the District of Columbia, and the Commonwealth of Puerto Rico. (*Id.*) Similarly, each of the common law counts states that the claim alleged therein is brought "on behalf of herself and all similarly situated class members under Illinois law and all states' laws that do not conflict with Illinois law." (*See id.* ¶¶ 80, 94, 110, 124, 138, 147.)

(7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Here, Athena first contends the FAC should be dismissed in its entirety because all Markoff's claims are preempted by the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.* Alternatively, even if not preempted, Athena contends that none of Markoff's claims are adequately pleaded.

### I.     Implied Preemption

Under the FDCA, a cosmetic is regulated differently, and more leniently, than a drug. *See, e.g.*, *Estee Lauder, Inc. v. FDA*, 727 F. Supp. 1, 2 (D.D.C. 1989) (discussing how cosmetics and drugs are regulated under the FDCA). Athena argues that Markoff's lawsuit essentially seeks to establish that the Products are mislabeled as cosmetics when they are, in fact, drugs and should be regulated as such. This is improper, according to Athena, because the determination of how the Products should be labeled is a task the FDCA assigns exclusively to the FDA. Indeed, the FDCA contains no private right of action, *Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011), and makes clear that, generally, "all . . . proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States," 21 U.S.C. § 337(a). Thus, Athena contends that Markoff's claims are preempted as an improper attempt to privately enforce the FDCA.

The doctrine of preemption stems from the U.S. Constitution's Supremacy Clause, which provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land." U.S. Const. art. VI; *McHenry County v. Raoul*, 44 F.4th 581, 587 (7th Cir. 2022). "The underlying rationale of the pre-emption doctrine . . . is that the Supremacy Clause invalidates state laws that interfere with or are contrary to, the laws of congress." *Chi. & N. W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (internal quotation marks omitted). Preemption can be express where Congress "define[s] explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Elec. Co.*, 496

U.S. 72, 79 (1990). Here, however, Athena invokes implied or conflict preemption, which occurs "where 'state law is pre-empted to the extent that it actually conflicts with federal law.'" *Stacel v. Teva Pharms., USA*, 620 F. Supp. 2d 899, 903 (N.D. Ill. 2009) (quoting *English*, 496 U.S. at 79). State or local law is impliedly preempted "if it would be impossible for a party to comply with both local and federal requirements or where local law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) (internal quotation marks omitted).[3]

When preemption has been raised as a defense, the Court begins "with the assumption that the historic powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," particularly when "Congress has legislated in a field which the States have traditionally occupied." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotation marks omitted). Matters of public health and safety have "primarily, and historically, [been] matters of local concern." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (internal quotation marks omitted). Accordingly, with respect to the FDCA, the Supreme Court has observed that, "[a]s it enlarged the FDA's powers to protect the public health and assure the safety, effectiveness, and reliability of drugs, Congress took care to preserve state law." *Wyeth*, 555 U.S. at 567 (internal quotation marks omitted). In *Wyeth*, the Supreme Court further observed that the FDCA's lack of "a federal remedy for consumers harmed by unsafe or

---

[3] In considering preemption at the motion to dismiss stage, the Court is mindful that "[p]reemption is an affirmative defense and pleadings need not anticipate or attempt to circumvent affirmative defenses." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (citation omitted). Thus, dismissal under Rule 12(b) is proper only "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Novotney v. Walgreen Co.*, 683 F. Supp. 3d 785, 788 (N.D. Ill. 2023) (quoting *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015)).

ineffective drugs" demonstrates that Congress "determined that widely available state rights of actions provided appropriate relief for injured consumers." *Id.* at 574. Further evidencing "that Congress did not regard state tort litigation as an obstacle to achieving its purposes" is the absence of a provision in the FDCA expressly preempting all such claims. *Id.* at 574–75.[4]

     To support its contention that any state law tort claim that, in essence, seeks to enforce the FDCA is impliedly preempted, Athena largely relies on *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). There, the Supreme Court held that the FDCA impliedly preempted state law tort claims arising from the defendant's fraudulent representations to the FDA in applying for approval to market certain medical devices. *Id.* at 343–44. The Supreme Court explained that the plaintiffs' state law fraud-on-the-FDA claims conflicted with the FDCA because the statute "empowers the FDA to punish and deter fraud against the Administration, and that . . . authority is used by the Administration to achieve a somewhat delicate balance of statutory objectives. The balance sought by the Administration can be skewed by allowing fraud-on-the-FDA claims under state tort law." *Id.* at 348. Yet the Supreme Court made clear in *Buckman* that its holding was predicated on the fact that "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied,'" contrasting the case before it with "situations implicating 'federalism concerns and the historic primacy of state regulation of matters of health and safety.'" *Id.* at 347–48 (first quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); and then quoting *Medtronic*, 518 U.S. at 485).

---

[4] The Supreme Court did note that Congress enacted "an express pre-emption provision for medical devices," but it went on to conclude that Congress's decision to confine preemption narrowly to medical devices "coupled with its certain awareness of the prevalence of state tort litigation, is powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness." *Wyeth*, 555 U.S. at 574.

The fraud-on-the-FDA claims in *Buckman* were not impliedly preempted because those state law claims paralleled federal safety requirements but rather because the claims "exist[ed] solely by virtue of the FDCA disclosure requirements." *Id.* at 352–53. Put differently, "were the plaintiffs to maintain their fraud-on-the-agency claims [in *Buckman*], they would not be relying on traditional state tort law which had predated the federal enactments in question [because] the existence of th[o]se federal enactments [was] a critical element in their case." *Id.* at 353. As interpreted by the Seventh Circuit, *Buckman* stands for the proposition that a "plaintiff must not be suing ***because*** the conduct violates the [FDCA]" for "such a claim would be impliedly preempted." *Bausch v. Stryker Corp.*, 630 F.3d 546, 557–58 (7th Cir. 2010); *see also Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1336 (11th Cir. 2022) ("State-law claims based on conduct that violates the [FDCA] can escape implied preemption only if the alleged wrongdoing would give rise to liability under state law even if the [FDCA] did not exist.").

Here, the state law tort claims in the FAC are firmly rooted in the states' historic power to protect citizens' health and safety. While Markoff's claims might also support a violation of the FDCA, they do not depend on the existence of a violation of the FDCA. Instead, the claims are rooted in the allegation that Athena sells products that it knows contain an ingredient associated with adverse side effects but fails to disclose fully the potential risks to customers. *See, e.g.*, *Gravitt v. Mentor Worldwide, LLC*, 289 F. Supp. 3d 877, 888 (N.D. Ill. 2018) ("*Buckman* does not preempt . . . 'tort law claims based on manufacturing defects' or the manufacturer's failure to warn of the product's known and unacceptable risks." (quoting *Bausch*, 630 F.3d at 557)); *Caraker v. Sandoz Pharms. Corp.*, 172 F. Supp. 2d 1018, 1032 (S.D. Ill. 2001) ("Illinois'[s] duty that manufacturers of dangerous products warn individuals as to the product's dangers falls within the state's traditional role of protecting the health and safety of its citizens."). As

explained by another district court that considered the same implied preemption argument Athena raises here, "[w]arning of [the alleged safety risks associated with DDDE] serves an important public health purpose and can be addressed via state claims." *Slattery v. Athena Cosmetics, Inc.*, No. 2:23-cv-10078-HDV (AJRx), 2024 WL 3914615, at *6 (C.D. Cal. July 17, 2024). And there is no indication in the FDCA that Congress intended to displace previously available tort remedies for customers who have been harmed by unsafe cosmetics. *See Wyeth*, 555 U.S. at 574 ("[Congress] may also have recognized that state-law remedies further consumer protection by motivating manufacturers to produce safe and effective drugs and to give adequate warnings.").

That the FAC relies on FDA findings regarding the safety issues associated with PGAs does not mean that Markoff is seeking to enforce the FDCA. *See Slattery*, 2024 WL 3914615, at *5 ("Plaintiff points to the FDA findings as evidence, but its claim in no way rises or falls on the actions of the FDA or any interpretation of the FDCA."). Importantly, the FAC plausibly alleges that the safety risks associated with DDDE are more than theoretical, as it claims that Markoff personally experienced pain and eye inflammation as a result of using one of the Products. (FAC ¶ 17.) Further, the FAC points to multiple reviews of the Products in which customers report experiencing similar side effects as Markoff. (*Id.* ¶¶ 6, 47.) Given that Markoff and others are alleged to have actually experienced side effects from using the Products, and the side effects they experienced are consistent with adverse effects associated with other PGAs (*id.* ¶¶ 4, 30), the FAC's allegations regarding the risks posed by the DDDE-containing Products stand on their own and do not depend on any FDA determination. *Slattery*, 2024 WL 3914615, at *5 ("[The plaintiff] does allege that she was physically injured and includes other allegations to support

that the Products marketed and sold by Athena containing DDDE pose substantial risks to consumers—independent of any FDA determination.").

The allegations concerning Markoff's (and other putative class members') experience of tangible harm from using the Products distinguishes the claims here from those in *Wilson v. ColourPop Cosmetics, LLC*, No. 22-cv-05198-TLT, 2023 WL 6787986 (N.D. Cal. Sept. 7, 2023). In *Wilson*, the district court found impliedly preempted claims that sought "to impose liability on [the defendant] ***because*** [the defendant's] conduct of allegedly using ingredients designated by the FDA as unsuitable and unapproved for cosmetic use in the eye area violates the FDCA." *Id.* at *7–8 (internal quotation marks omitted). Importantly, the plaintiff in *Wilson* did not personally experience a negative physical reaction from using the relevant products. *Id.* at *4. Indeed, *Wilson* relies in substantial part on a Ninth Circuit precedent that distinguishes claims in which a patient who has suffered harm asserts a traditional common law tort (which survive preemption) from those where the alleged state law violation is solely derived from noncompliance with the FDCA (which do not). *See Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1050 (9th Cir. 2022) ("[The plaintiff] does not claim harm to a patient, where a traditional common law tort action might provide a remedy to the patient and escape preemption. Instead, the claim is that a manufacturer is harmed economically because the defendant violated the FDCA." (footnote omitted)); *see also Slattery*, 2024 WL 3914615, at *5 (explaining that, in *Nexus*, "[a] claim for economic harm was insufficient because the state law violations ***relied*** on alleged FDCA violations").

In short, Markoff's tort claims in the FAC seeking to hold Athena liable for its failure to disclose the Products' potential side effects—which are alleged to have been actually experienced by Markoff and other users of the Products—could be asserted regardless of

10

whether that same conduct also violates the FDCA. Consequently, the Court finds that the FAC's claims are not impliedly preempted.

## II. State Law Consumer Protection Claim (Count I)

Turning to the sufficiency of Markoff's individual claims, the Court begins with Athena's contention that Markoff has failed to satisfy federal pleading standards with respect to the alleged violation of state statutory consumer protection law. In particular, Athena faults the FAC for listing over fifty consumer protection statutes under Count I without addressing how the allegations in the FAC satisfy the elements of any single one of those laws. Athena, however, demands too much of Markoff at the pleading stage.

Under the federal notice pleading system, a "complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has 'substantive plausibility.'" *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 517 (7th Cir. 2015) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Here, the FAC sets forth detailed allegations about how Athena misled Markoff and other customers into believing that the Products were all-natural and free of side effects, that Markoff and other customers relied on Athena's deceptive actions, and that they suffered actual damages as a result. These allegations are sufficient to support a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505 *et seq.*, the state consumer protection statute applicable to Illinois residents like Markoff. *See, e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (listing the elements of a claim for damages under the ICFA as including (1) a deceptive act or practice by the defendant; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that the defendant intended the plaintiff to rely on the deception; and (4) that actual damages were proximately caused by the deception); *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill.

2022) (explaining that, under the ICFA, a practice is deceptive where there is "a probability that a significant portion of the general consuming public acting reasonably in the circumstances, could be misled" (internal quotation marks omitted)). "Having informed [Athena] of the factual basis for [her] complaint, [Markoff was] required to do no more to stave off threshold dismissal for want of an adequate statement of [her] claim." *Johnson*, 574 U.S. at 12.

In arguing that the FAC fails to plead Markoff's statutory consumer protection claim adequately, Athena implicitly suggests that the FAC be evaluated under the standards of code pleading such that the FAC should have "plead[ed] the elements of a cause of action along with facts supporting each element." *Runnion*, 786 F.3d at 517. But the notice pleading system established by the Federal Rules of Civil Procedure does not require such level of detail. *Deslandes v. McDonald's, USA, LLC*, 81 F.4th 699, 705 (7th Cir. 2023) ("Nor need a complaint plead law or match facts to elements of legal theories."). Indeed, a complaint need not even plead legal theories. *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019).[5] Consequently, the Court rejects Athena's contention that the state law statutory consumer protection claim at Count I must be dismissed as inadequately pleaded.

---

[5] To the extent Athena criticizes Markoff for not stating a claim under each and every state consumer protection statute listed in the FAC, that is not necessary for Markoff to survive a Rule 12(b)(6) motion. The Court understands Markoff to be pursuing her individual claims under Illinois law. Notably, the consumer protection laws of other states appear to be listed in the FAC primarily as support for Markoff's putative nationwide class action. Whether Markoff can satisfy the requirements for certification of a class whose members have claims arising under the laws of states other than Illinois has not been briefed by the parties and, in any case, is a matter properly raised under Federal Rule of Civil Procedure 23 in response to a motion for class certification or, at the pleadings stage, via a motion to strike class allegations. *See Harris v. Rust-Oleum Corporation*, No. 21-cv-01376, 2022 WL 952743, at *3–*4 (N.D. Ill. March 30, 2022) (explaining that, "in certain circumstances, it will be apparent from the complaint that the class allegations are facially and inherently deficient and therefore class certification is inappropriate" and citing cases approving a motion to strike as an appropriate device to determine whether a case will proceed as a class action) (internal quotation marks omitted). Athena, however, did not file a Rule 23 motion and instead challenges only whether Markoff has stated a claim. Similarly, in response to Athena's Rule 12(b)(6) motion, Markoff need not show that she has stated a claim under the common law

### III.    Fraud (Count II)

Next, Athena contends that Markoff's fraud claim at Count II is not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To state the circumstances of fraud with sufficient particularity, the plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). "Courts in this circuit have recognized that the standard to state a fraudulent omission claim under Rule 9(b) is more relaxed than the typical fraud claim." *FDIC v. Patel*, No. 19-cv-6917, 2020 WL 6681348, at *2 (N.D. Ill. Nov. 12, 2020).

In support of dismissal, Athena first asserts that the FAC fails to allege with particularity any safety risk associated with DDDE and therefore does not plead sufficiently that Athena fraudulently omitted to warn of those risks. The Court disagrees. As noted above, the FAC alleges that DDDE is a PGA, and thus falls within a class of compounds associated with adverse reactions to the eye and surrounding areas. Moreover, the FAC alleges that Markoff and other purchasers of the Products experienced similar adverse effects after they used a Product. The FAC also cites a study by the European Commission Scientific Committee on Consumer Safety that was unable to conclude that DDDE is safe for use in cosmetics meant to be applied around the eye. (FAC ¶ 31.) Taken together, the FAC alleges the potential safety risk posed by DDDE with sufficient particularity. *See United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732,

---

of each state for fraud, negligent misrepresent, breach of warranty (express and implied), negligence, or unjust enrichment.

741 (7th Cir. 2021) ("Rule 9(b) requires specificity, but it does not insist that a plaintiff literally prove his case in the complaint."). Given its alleged awareness that the Products' contained DDDE, it is reasonable to infer that Athena knew or should have known that the Products could cause side effects similar to those caused by other PGAs. The FAC therefore plausibly alleges that Athena's failure to disclose the Products' potential safety risks was a fraudulent omission. *E.g.*, *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2014 WL 7365872, at *7 (N.D. Ill. Dec. 23, 2014) ("[P]laintiffs have also sufficiently pled fraud by omission. They allege that defendants failed to disclose the risks of stroke, pulmonary embolism, and cardiovascular events and that they knew or should have known about these side effects.").

Second, Athena argues that the FAC does not sufficiently plead that Athena's omissions were made with the intent to induce Markoff and other customers to act. But even under Rule 9(b) intent can be alleged generally. It is enough at this stage that the FAC alleges that Athena sold products that it knew contained a PGA without disclosing that PGAs can cause adverse reactions and instead emphasized the effects of the Products' natural ingredients. And even when Athena eventually acknowledged the side effects associated with use of the Products, it nonetheless tended to downplay the frequency of those adverse reactions and claimed ignorance as to their cause. (FAC ¶¶ 48–49.) Together, the FAC's allegations make it plausible that Athena omitted pertinent information regarding with the Products with the intent to mislead customers into believing that the Products were safe and natural. *See Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) ("[W]hile the defendant's mental state need not be pleaded with particularity, the complaint must still afford a basis for believing that plaintiffs could prove scienter." (internal quotation marks omitted)).

Because the FAC pleads fraud with particularity, Athena's motion to dismiss is denied with respect to the fraud claim in Count II.

### IV.     Negligence-Based Claims (Counts III and VI)

Athena contends that Count III's claim for negligent misrepresentation and Count VI's negligence claim must be dismissed as barred by the economic loss doctrine. Under Illinois law, the economic loss doctrine provides that a "plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982). Since Markoff concededly seeks to recover only the economic damages she incurred as a result of Athena's omissions, Athena argues that the economic loss doctrine precludes her negligence claims.

Markoff's claimed damages are based on the amount she paid for the Products in excess of what she would have paid if their safety risks had been fully disclosed, which fall squarely within the ambit of the economic loss doctrine. *See Sienna Ct. Condo. Ass'n v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119 (Ill. 2018) ("In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." (internal quotation marks omitted)). When a purchaser of a defective product suffers "harm relat[ing] to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery." *Moorman*, 435 N.E.2d at 451. While Markoff contends that the economic loss doctrine does not apply because her negligence claims do not relate to the performance of a contract, she supports this proposition by citing a case involving the provision of a service. *Flores v. Aon Corp.*, 242 N.E.3d 340, 360–61 (Ill. App. Ct. 2023) ("[T]he Illinois Supreme Court . . . held that the [economic loss] doctrine applies to the service industry only where the duty of the party performing the service is defined by a contract

15

executed with the client." (citing *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994))). By contrast, the present case involves the sale of tangible goods and the doctrine applies with full force. *See Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986) ("In *Moorman*, after determining that the losses the plaintiff sought to recover resulted solely from its disappointed commercial expectations, this court held that the plaintiff's remedy must lie under the warranty provisions of the Uniform Commercial Code."); *see also Bruno v. Am. Textile Co.*, No. 22-cv-2937, 2023 WL 6976826, at *5 (N.D. Ill. Oct. 23, 2023) ("Courts in this district consistently deny negligent misrepresentation claims due to the economic loss doctrine in cases where a plaintiff alleges he was duped by deceptive trade practices.").

Markoff also argues that the Court should refrain from dismissing her claims under the economic loss doctrine because, with discovery, she may be able to establish the applicability of one of the doctrine's exceptions. But Markoff cannot avoid dismissal simply by speculating that she may later be able to establish some exception without explaining how any particular one might apply. In any case, as alleged, no exception to the economic-loss doctrine can save the negligence-based claims.

Illinois law recognizes the following three exceptions to the economic loss doctrine:

(1) where the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.

*In re Chi. Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997) (citations omitted).[6] As to the first exception, while Markoff does allege that she suffered personal injury from using the Products, her injury did not result from a sudden or dangerous occurrence. Markoff does not argue, and the Court does not understand her to be alleging, that the side effects she experienced qualify as a sudden or dangerous event. *See Loman v. Freeman*, 890 N.E.2d 446, 452 (Ill. 2008) ("This court had in mind fires, explosions, or other calamitous occurrences due to the failure of a product and the resulting risk of harm to persons or property."). The third exception is also inapplicable because, although Markoff alleges a negligent misrepresentation, Athena is in the business of manufacturing and selling cosmetics—*i.e.*, tangible goods—not supplying information for the guidance of others in their business transactions. *See, e.g.*, *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1120 (N.D. Ill. 2019) ("[T]he negligent misrepresentation exception to the *Moorman* doctrine is not applicable if the information supplied is merely ancillary to the sale of a product."); *Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 727 (N.D. Ill. 2022) ("The [negligent misrepresentation] exception does not . . . apply to information provided by the purveyor of tangible products.").

Because Markoff seeks to recover for solely economic losses and no exception to Illinois's economic loss doctrine applies, the FAC's negligent misrepresentation and negligence claims at Counts III and VI are dismissed.

---

[6] The second exception is the reason Markoff's fraud claims are not subject to challenge under *Moorman*, but it does not save her negligence claims. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 568–574 (7th Cir. 2012) (finding that fraud claims survived dismissal under the intentional misrepresentation exception to the economic loss doctrine but the negligent misrepresentation claim did not).

## V.        Breach of Express Warranty (Count IV)

In Count IV, the FAC alleges that Athena breached an express warranty that the Products were safe and effective for their intended use. "In Illinois, an express warranty is created where (1) the seller makes an affirmation of fact or promise; (2) that relates to the goods; and (3) becomes part of the basis of the bargain between the parties." *CHS Acquisition Corp. v. Watson Coatings, Inc.*, No. 17-cv-4993, 2018 WL 3970137, at *3 (N.D. Ill. Aug. 20, 2018); *see also* 810 ILCS 5/2-313. Athena contends that the express warranty claim fails because the FAC does not plead any affirmation of fact or promise made by Athena to the Products' purchasers.

The Court agrees that the FAC does not plead an express affirmation of fact or promise regarding the Products' ingredients and side effects. On the contrary, the allegations focus on the implications created by Athena's omissions—for example, "Athena deceptively ***implies*** to consumers that the [Products] merely contain benign, natural ingredients." (FAC ¶ 33 (emphasis added); *see also id.* ¶ 7 ("Athena falsely implied the [Products] are effective at improving the appearance of eyelashes and eyebrows because of the natural ingredients and 'vitamins' contained therein.").) Yet the FAC does not allege that Athena directly claimed that the Products did not contain DDDE or were completely free of side effects. Based on the allegations, the impression that the Products were free of side effects and wholly natural came less from what was said than what was left unsaid. *See Manley*, 417 F. Supp. 3d at 1124–25 (dismissing express warranty claim because "what plaintiff alleges is an omission, not an actionable affirmation"); *see also Slattery*, 2024 WL 3914615, at *7 (dismissing the Florida law express warranty claim because "none of the broad allegations by Plaintiff about Athena's marketing or labeling expressly warrant the safety of the Products"). The Court therefore dismisses Count IV's express warranty claim due to the failure to plead adequately any affirmative statement of fact or promise that Athena made regarding the Products.

## VI.     Breach of Implied Warranty (Count V)

Count V asserts a claim for breach of implied warranty. In Illinois, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314. To prevail on a claim for breach of implied warranty of merchantability, a plaintiff must prove: "(1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality." *Brandt v. Bos. Sci. Corp.*, 792 N.E.2d 296, 299 (Ill. 2003). And goods are not of merchantable quality if they are "unfit for the ordinary purposes for which the goods are used." *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 666 (Ill. App. Ct. 2003).

Athena argues that Markoff's implied warranty claim must be dismissed because the FAC does not sufficiently plead that the Products pose any safety hazards. As noted above, however, the Court rejects Athena's contention that the FAC fails to plead any safety risk associated with the Products. And "[i]t is evident that the harm [Markoff] suffered from use of the Products, if true, does not fall within the ordinary purpose of the Products." *Slattery*, 2024 WL 3914615, at *7.  The Court denies Athena's motion to dismiss as to Count V.

## VII.     Unjust Enrichment (Count VII)

Finally, Athena argues that Count VII's unjust enrichment claim must be dismissed because it rests on the same improper conduct that underlies the FAC's other claims and, according to Athena, none of the other counts state viable claims. *See Vanzant v. Hill's Pet Nutrition, Inc*., 934 F.3d 730, 740 (7th Cir. 2019) (holding that under Illinois law unjust enrichment is a "request for relief" that is "tied to the fate" of an independent cause of action). But given the Court's conclusion that Counts I, II, and V may proceed, the unjust enrichment claim may proceed as well.

## CONCLUSION

For the foregoing reasons, Athena's motion to dismiss (Dkt. No. 23) is granted in part and denied in part. Counts III, IV, and VI of the FAC are dismissed. The motion is otherwise denied.

ENTERED:

Dated:  January 28, 2025

_____
Andrea R. Wood
United States District Judge